DOYLE RAY HENDERSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Henderson v. Commissioner
Docket No. 7805-76.
United States Tax Court
T.C. Memo 1980-372; 1980 Tax Ct. Memo LEXIS 219; 40 T.C.M. (CCH) 1193; T.C.M. (RIA) 80372; September 10, 1980, Filed *219 From May 1972 until March 1974 petitioner was an escaped prisoner who engaged in marijuana smuggling. Using several aliases petitioner rented a large house in Florida and purchased a yacht, two motorcycles and an automobile. All of petitioner's expenditures were made in cash. Petitioner did not file any tax returns for the years in issue. Held, the source of petitioner's funds was taxable income and not loans from friends and relatives. Held further, petitioner is liable for the additions to tax under section 6651(a)(1), section 6653(a), and section 6654(a). Doyle Ray Henderson, pro se. John P. Tyler, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: By letter dated May 20, 1976 respondent determined deficiencies in and additions to petitioner's Federal income taxes as follows: Additions to Tax
Year
Deficiency
Section 6651(a) [1]
Section 6653(a)
Section
6654(a)
1972
$ 121.50
$ 30.38
$ 6.08
1973
16,990.62
2,712.72
849.53
$ 533.92
1974
372.37
93.09
18.62
The issues for decision are whether petitioner received unreported *220 income during the years in issue and whether the additions to tax are appropriate. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts together with the exhibits attached thereto are incorporated herein by this reference. Petitioner was an inmate in the United States Penitentiary at Atlanta, Georgia when he filed his petition herein. During the taxable years in issue petitioner was an escapee from a Texas prison and resided in various states, including Florida, Colorado, and Georgia. Petitioner did not file income tax returns for any of the years in issue. From January 1, 1972 until May 29, 1972 with the exception of a 2 or 3 week period, petitioner was incarcerated in Georgia and Texas. Petitioner's wife had previously sued for divorce and on March 8, 1972 a Final Judgment and Decree of divorce was entered in Cobb County, Georgia. On May 29, 1972 petitioner and Leon McCain escaped from prison in Texas. From that date until petitioner was arrested in Florida on March 24, 1974 petitioner was a fugitive from justice. On various occasions petitioner used the alias Phillip Giardino. On January 5, 1973 petitioner, using *221 the alias Phillip Giardino, paid a cash deposit of $2,000 to Ernest B. Arnold for a yacht known as the "Tiger's Pad II." [2] The Tiger's Pad II was a 1950 53 foot Burger Yacht, Florida Registration No. FL 5163BE. The total purchase price was $39,000 and the balance was due January 15, 1973. On January 8, 1973 a $2,000 deposit was credited to Arnold's bank account. On January 13, 1973 petitioner paid $30,000 cash to Arnold and the balance due date was extended to January 24. Arnold's account was credited $30,134.36 on January 15, 1973. Petitioner paid Arnold the remaining $7,000 due on the Tiger's Pad II over an approximately 2-week period from January 13, 1973. On January 29, 1973 and February 5, 1973, Arnold's account was credited with deposits of $1,900 and $4,900, respectively. These deposits represented the final payments for the yacht less amounts withheld by Arnold for living expenses. Petitioner lived in Florida part of the time from June 1972 until March 1974. During this period petitioner was admittedly involved in smuggling marijuana into the United States. In 1972, 1973, and 1974 petitioner made *222 trips to Bimini, Nassau, Jamaica, Colorado, and Georgia. During 1973 petitioner rented a three bedroom house with a swimming pool in Gulfstream, Florida. The house was located on the intracoastal waterway and the monthly rental was at least $500. On Septemer 9, 1973, officers of the Gulfstream Police Department and the Palm Beach County Sheriff's Department conducted a warrantless search of the house rented by petitioner. Petitioner fled before the authorities arrived. Two local Drug Enforcement Administration agents, Robert Nutting and Roy Magno, arrived at the house after the local authorities had conducted the search. The search had disclosed three cancelled checks from the Del Mar Marina in Delray Beach, Florida, where the yacht was docked. A search of the yacht yielded a small amount of marijuana debris and blank driver's licenses from Maryland, Georgia, and New Jersey. Ownership of the yacht was later determined from the registration number on its hull. The registered owner of the yacht at that time was Cutler and Associates, Inc. of Atlanta. The yacht was thereafter seized by the United States. In the forfeiture proceeding in the United States District Court for the *223 Southern District of Florida, the Court held, in a memorandum opinion dated August 19, 1976, that the seizure of the yacht was based solely on information obtained by the search of the house. The search of the house was held unconstitutional and the yacht was therefore seized illegally. Petitioner sold the yacht for $5,000 in 1978. Sometime in November 1973, Nutting was contacted by an FBI agent, Paul Mallet, regarding the Tiger's Pad II. Mallet told Nutting that Thomas Arnold (Arnold's son), after seeing a newspaper article concerning the yacht's seizure, had contacted Mallet with information on the yacht's ownership. On November 30, 1973 Nutting met with Mallet and Thomas Arnold. At this meeting Thomas gave Nutting two receipts for the sale of the Tiger's Pad II to Phillip Giardino. One receipt was for the $2,000 deposit and the other for the $30,000 payment. On January 28, 1974 petitioner, using the alias Roger Owen, purchased a 1968 Buick Riviera from Scott Lincoln-Mercury of Warner Robins, Georgia. Title to the Riviera was later transferred to petitioner's sister. The price of the auto is not in the record. On March 20, 1974 petitioner, using the alias Roger Owen, paid *224 $4,536 in cash to Honda Motor Mart of Warner Robins, Georgia for a new motorcycle, a used motorcycle, and a trailer. L. C. Reece is a long-time friend of petitioner. Reece and his brother have operated Reece Brothers Standard Station in Atlanta for 22 years. The service station is operated by a partnership. For the taxable years 1972, 1973 and 1974 Reece's distributive share of the partnership's income was a $528 loss, $1,267, and $1,872, respectively. Reece reported no other income for 1972, 1973 and 1974. Reece had no documentation of any loans he may have made to petitioner. Clara Powell is petitioner's aunt. James Powell, her husband, died in August 1970. Clara received some government checks in small amounts after her husband's death but was not eligible for social security benefits during the years in issue. In order to pay off some debts existing on a used car lot, Clara took an $8,000 mortgage secured by a deed on her home. Clara also received some money from the sale of used cars. On April 7, 1971 Clara sold the house for $12,000. She used $8,000 of the sale proceeds to pay the mortgage on the house and deposited $2,500 in her savings account on August 3, 1972. *225 On February 9, 1973 Clara made a withdrawal from her savings account of $200. No other withdrawals were made in 1972 (after the $2,500 deposit) or 1973. Clara's 1971 Federal income tax return shows adjusted gross income of $1,459.76 ($306.76 from the operation of a small grocery store and $1,153 from rental property). Clara also had no documentation of any loans she may have made to petitioner. Petitioner was arrested on March 24, 1974. From March 24, 1974 through December 31, 1974 petitioner was imprisoned in Georgia and Florida. On September 8, 1975, petitioner met with Agent Ron Pendergrass of the Internal Revenue Service. Petitioner told Pendergrass that he had $25,000 in "stash money" when he escaped from prison in Texas and that he also had substantial gambling winnings while he was a fugitive. Petitioner wrote a letter dated February 28, 1976 to Agent Claude Lamar of the Internal Revenue Service. In this letter petitioner denied any statements regarding a "stash" of $25,000 or gambling winnings. Petitioner stated that he had received a $36,000 loan from his uncle, James Powell. Respondent reconstructed petitioner's income by using a cash expenditures method. Respondent *226 estimated petitioner's living expenses (as established by the Bureau of Labor Statistics) for one person under the age of 35 living at an intermediate level in Orlando, Florida plus any specific expenditures to be taxable income. The following table reflects respondent's calculations: 1972
1973
1974
Food
$ 816
$ 878
$ 992
Housing
814
875
990
Transportation
334
359
406
Clothing
397
427
483
Medical Care
227
244
276
Other
651
700
791
3,239
3,483
3,938
Percent of Year
Petitioner was
not in Prison
X.50
X 1.00
X.23
$1,620
$3,483
$ 906
Payments on Yacht
39,000
Payments to Mercy
Hospital
5,000 [3]
Cash on Hand When
Arrested
2,086
Total Unreported Income
$1,620
$47,483
$2,992
OPINION Petitioner's first contention is that the receipts for the sale of the yacht are inadmissible products of an illegal search. Petitioner maintains that the receipts must have been obtained from the search of the yacht and because the search that led the police to the yacht was held invalid any matter obtained therefrom is inadmissible. Respondent contends that the receipts, which are photostatic copies *227 of the actual sales receipts, were given voluntarily to Nutting by an "independent source." Respondent concludes that the receipts were not the fruit of an illegal search and are thus admissible. Petitioner is correct that in Suarez v. Commissioner, 58 T.C. 792 (1972), this Court held that evidence obtained in an illegal search is inadmissible in a civil tax proceeding. [4] However, notwithstanding Suarez, the fact that information may have been obtained through an illegal search or seizure does not close the door to acquisition of the same information from untainted sources. Silverthorne Lumber Co. v. United States, 251 U.S. 385 (1920), Proesel v. Commissioner, 73 T.C. 600 (1979). Nutting testified that the photostated receipts were fortuitously acquired *228 from an independent and unsolicited source. Petitioner has shown us no reason to doubt such testimony, and we see no reason to do so. The receipts offered by respondent were not the product of the warrantless search of petitioner's house and regardless of the constitutionality of that search are admissible herein. Petitioner does not contest respondent's method of reconstructing petitioner's income. Rather, petitioner argues that a major portion of the expenditures determined to be taxable income by respondent were actually the proceeds of loans. Petitioner states that he received loans of $2,000 and $9,000 from Reece sometime in late 1972 and early 1973, respectively, and a $5,000 loan from Clara in late 1972 or early 1973. [5]
We find petitioner's contention incredible. During the years in issue petitioner was active in marijuana smuggling on a large scale. Petitioner rented *229 an expensive house in Florida for much of 1973. Petitioner purchased two motorcycles and a Buick Riviera in early 1974. [6] Petitioner made trips to Bimini, Nassau, Jamaica, Colorado, and Georgia during the years in issue. Obviously petitioner expended a great deal of money during the years before us. Reece testified that he loaned petitioner $2,000 and $9,000 in late 1972 or early 1973, respectively. The $11,000 was supposedly kept at his service station. The partnership was the only source of income of Reece and on his 1972, 1973 and 1974 returns he reported his distributive share to be a $528 loss, $1,267 and $1,872, respectively. Reece produced no notes or other evidence of indebtedness from petitioner. Clara Powell, petitioner's aunt, allegedly loaned petitioner $5,000 in late 1972 or early 1973. Clara was widowed in 1970 and mortgaged her home for $8,000 *230 in order to meet certain debts from a used car lot. She later sold the house for $12,000, paid the mortgage, and deposited $2,500 in her savings account. No large withdrawals were made thereafter. Clara testified that she had some income from the used car lots, but her 1971 return does not reflect this claim. Clara's 1971 return shows $306 income from a small grocery store and $1,153 from rental property. Clara testified that she kept the $5,000 in a hot water heater until she loaned it to petitioner, although she could not remember what denominations the bills were. Petitioner introduced no notes or other evidence of his alleged indebtedness to Clara. Based on Reece's and Clara's financial positions we cannot agree that they were able to loan petitioner such substantial amounts of cash. The source of petitioner's funds was, in all likelihood, his smuggling activities. Petitioner maintains that Arnold is lying about the time of the $39,000 payments for the Tiger's Pad II. Petitioner claims that he paid approximately $15,000 in 1972 and the remainder in 1973. Petitioner believes that Arnold must have some tax reason for testifying that petitioner paid him $39,000 in January *231 1973. No such reason exists on the record. Arnold treated the sale of the boat as a sale of his principal place of residence and recognized no gain from the sale, pursuant to section 1034. Because section 1034 applies to sales after December 31, 1953, we fail to comprehend why Arnold would rather report the proceeds entirely in 1973 instead of in 1972 and 1973. Lastly, petitioner's own account has varied considerably. In September 1975, petitioner told Pendergrass that he had approximately $25,000 in "stash" when he escaped from jail in Texas. He also told Pendergrass that he had a large amount of gambling income. In February 1976 petitioner wrote that he never stated he had a $25,000 "stash," but had received a $36,000 loan fro his uncle, James Powell. At trial neither petitioner nor Clara, James' widow, mentioned this $36,000 "loan." Respondent determined that petitioner was liable for the section 6651(a)(1) [7] *232 addition to tax for failure to file his 1972, 1973, and 1974 returns. Petitioner has not contested the applicability of section 6651(a)(1) and therefore we hold for respondent. [8]Rule 142(a), Tax Court Rules of Practice and Procedure. Respondent determined that petitioner was liable for the sections 6653(a) [9] and 6654(a) [10] additions to tax as well. Because petitioner also does not contest this determination we *233 must sustain respondent.
Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue, unless otherwise noted.↩
2. The yacht has also been called "Pathfinder" in testimony and exhibits.↩
3. Respondent has agreed that petitioner paid $716.20 to Mercy Hospital in 1973. Petitioner was treated at Mercy Hospital for burns suffered from the yacht's engine.↩
4. We recognize that our opinion in Suarez v. Commissioner, 58 T.C. 792 (1972), was criticized in United States v. Janis, 428 U.S. 433 (1976). Respondent urges, however, that even if the receipts were the fruit of the illegal search by state officers, their use in a Federal civil action may not be banned under the Janis↩ ruling. The record is unclear as to the extent of the participation by the Drug Enforcement Administration Agents.
5. Petitioner argued in his opening statement that he received loans from his sister and brother-in-law as well. However, petitioner introduced no evidence of loans from this source and, although the record was kept open in order to depose petitioner's sister, petitioner failed to appear at her deposition.↩
6. Petitioner maintains that he purchased one motorcycle for McCain, with McCain's money, because McCain had no identification. Similarly, petitioner argues that he purchased the automobile for his brother-in-law with his brother-in-law's money. Respondent does not contend that these expenditures are also taxable income.↩
7. SEC. 6651.FAILURE TO FILE TAX RETURN OR TO PAY TAX. (a) Addition to the Tax.--In the case of failure-- (1) to file any return required under authority of subchapter A of chapter 61 (other than part III thereof) * * * on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is not for more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate. ↩
8. Petitioner's 1972 gross income was determined to be $1,620. Section 6012(a)(1)(A)(i) did not required petitioner to file a tax return for 1972. However section 6017 required petitioner to file a self-employment tax return. Failure to file a self-employment tax return is also subject to the section 6651(a) addition to tax.↩
9. SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations With Respect to Income or Gift Taxes.--If any part of any underpayment * * * of any tax imposed by subtitle A * * * is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment. ↩
10. SEC. 6654. FAILURE BY INDIVIDUAL TO PAY ESTIMATED INCOME TAX.
(a) Addition to the Tax.--In the case of any underpayment of estimated tax by an individual, except as provided in subsection (d), there shall be added to the tax under chapter 1 and the tax under chapter 2 for the taxable year an amount determined at an annual rate established under section 6621 upon the amount of the underpayment (determined under subsection (b)) for the period of the underpayment (determined under subsection (c)).↩